## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL J. RUDDY and | : | CIVIL ACTION - LAW |
| CHERILYNN M. RUDDY, his wife. | : | |
| | : | |
| Plaintiffs, | : | JURY TRIAL DEMANDED |
| | : | |
| v. | : | |
| | : | |
| United States of America; | : | |
| US Postmaster General John E. Potter; | : | |
| United States Postal Service; | : | |
| Linda Shall; Brian Tucker; | : | |
| Christopher Pugliese; Lisa Bansa; | : | |
| Diane Passarelli; Rick Dickson and | : | |
| Holly Shope | : | |
| | : | |
| Defendants. | : | NO. 3:CV-11-1100 |

### AMENDED COMPLAINT

**NOW COME**, the Plaintiffs, Michael J. Ruddy and Cherilynn M. Ruddy,

his wife, by their attorneys THE LOFTUS LAW FIRM, P.C. and brings this

Amended Complaint upon the following cause of action:

### INTRODUCTION

1.  This action at law seeks remedies for violations of the Federal Tort

Claims Act and State Pendente Claims for Conspiracy; Invasion of Privacy;

Constructive Discharge; Libel and Slander; Intentional Infliction of Emotional

Distress and Loss of Consortium.

## JURISDICTION AND VENUE

2.  The Plaintiff has complied fully with all of the prerequisites for the jurisdiction in this Court having made claims under the Federal Tort Claims Act by filing Form 95 on January 28, 2011.  A denial of the claims was received on February 28, 2011 by letter dated February 23, 2011. The unlawful employment practices averred herein occurred in the Middle District of Pennsylvania, thus making venue proper in this Court.

## NATURE OF CLAIM

3.  Plaintiff seeks a remedy for violation of the Federal Tort Claims Act and State Pendente Claims of Conspiracy; Invasion of Privacy; Constructive Discharge; Libel and Slander; Intentional Infliction of Emotional Distress and Loss of Consortium.

## ADMINISTRATIVE PROCEEDINGS

4.  Plaintiff timely filed Form 95 with the United States of America, the United States Postal Service and the Law Department of the National Tort Center.  The Plaintiffs received a denial on February 28, 2011 and are filing this Complaint within the six (6) month statutory date.

## PARTIES

5.  The Plaintiff, Michael J. Ruddy, is an adult individual and citizen of the Commonwealth of Pennsylvania with a principle residence at 205 Glenburn Road in the Borough of Clarks Green, County of Lackawanna and Commonwealth of Pennsylvania.

6.  The Plaintiff, Cherilynn M. Ruddy, is an adult individual and citizen of the Commonwealth of Pennsylvania with a principle residence at 205 Glenburn Road in the Borough of Clarks Green, County of Lackawanna and Commonwealth of Pennsylvania.

7.  The Defendant United States of America is a Republic with its principal place of business located at 950 Pennsylvania Avenue, NW, Washington, DC 20530-0001

8.  The Defendant United States Postmaster General John E. Potter is an adult individual with his principal place of business located at 475 L'Enfant Plaza SW, Washington, DC 20260-3100. At all times relevant hereto he was the Director of the United States Postal Service.

9.  The Defendant United States Postal Service is a Department of the United States with its principle place of business located at 2800 Stafford Avenue,

in the City of Scranton, County of Lackawanna and Commonwealth of Pennsylvania.

10. The Defendant Linda Shall is an adult individual and citizen of the Commonwealth of Pennsylvania with a principle place of business located at the US Postal Service 2800 Stafford Avenue in the City of Scranton, County of Lackawanna and Commonwealth of Pennsylvania.  At all times relevant hereto she was Postmaster of US Post Office - Scranton GMF.

11. The Defendant Brian Tucker is an adult individual and citizen of the Commonwealth of Pennsylvania with a principle place of business located at the US Postal Service 2800 Stafford Avenue in the City of Scranton, County of Lackawanna and Commonwealth of Pennsylvania.  At all times relevant hereto he was a Supervisor at the US Post Office - Scranton GMF.

12. The Defendant Christopher Pugliese is an adult individual and citizen of the Commonwealth of Pennsylvania with a principle place of business located at the US Postal Service 2800 Stafford Avenue in the City of Scranton, County of Lackawanna and Commonwealth of Pennsylvania.  At all times relevant hereto he was a Temporary (204B) Supervisor at the US Post Office - Scranton GMF.

4

13. The Defendant Lisa Bansa is an adult individual and citizen of the Commonwealth of Pennsylvania with a principle place of business located at the US Postal Service 2800 Stafford Avenue in the City of Scranton, County of Lackawanna and Commonwealth of Pennsylvania.  At all times relevant hereto she was a Temporary (204B) Supervisor at the US Post Office – Scranton GMF.

14. The Defendant Diane Passarelli is an adult individual and citizen of the Commonwealth of Pennsylvania with a principle place of business located at the US Postal Service 2800 Stafford Avenue in the City of Scranton, County of Lackawanna and Commonwealth of Pennsylvania.  At all times relevant hereto she was a (204B) Supervisor at the US Post Office – Scranton GMF.

15. The Defendant Rick Dickson is an adult individual and citizen of the Commonwealth of Pennsylvania with a principle place of business located at the US Postal Service 2800 Stafford Avenue in the City of Scranton, County of Lackawanna and Commonwealth of Pennsylvania.  At all times relevant hereto he was a Supervisor at the US Post Office – Scranton GMF.

16. The Defendant Holly Shope is an adult individual and citizen of the Commonwealth of Pennsylvania with a principle place of business located at the US Postal Service 1425 Crooked Hill Road, in the City of Harrisburg, County

of Dauphin and Commonwealth of Pennsylvania.  At all times relevant hereto she was a Manager.

## FACTUAL BACKGROUND

17. The Plaintiff was born on January 27, 1955 and at all times relevant hereto was Fifty-Four (54) years of age.

18. He is an employee of the US Postal Service Scranton, Pennsylvania.

19. He has a total of approximately 34 years of service including his military time making him 2nd on the Seniority List.

20. The Plaintiff did not intend to retire until the age of Sixty-Five (65).

21. The Plaintiff has been a loyal employee and performed all of the essential elements of the job.

22. The Plaintiff has been on the Desired Overtime List the majority of his career with the US Postal Service.

23. The Plaintiff over the years has received numerous Good Driving Awards.

24. The Plaintiff has received a Certificate for 25 Years of Service from the US Postal Service.

25. The Plaintiff has received a Certificate of Appreciation for 30 Years of Federal Service from the US Postal Service.

26. The Plaintiff has received a 34 Years of Service Award from the US Postal Service.

27. The Post Office, through their agents, servants and/or employees callously and intentionally created an on site dangerous and hostile environment through their threats, intimidation and actions causing an exacerbation of the Plaintiff's disability and severely injuring him all of which was outside the scope of their employment.  The conduct was continuous, unrelenting and pervasive.

28. Other employees were not selectively and deliberately injured.

29. Regular Carriers with twenty-five (25) or more years of continuous service may have the actual time used even if it is more than standard (18/8). (The standard for sorting the mail is 18/8. Letters would be 18 and magazines (flats) would be 8 in a minute.

30. In case of a medical emergency, a nurse or medical unit is not available at the Scranton GMF.

31. On November 7, 2008, the union filed a complaint alleging Scranton Post Office Postmaster Linda Shall was breaking the National Memorandum of Understanding by using unverified data to intimidate and harass

7

letter carriers by ordering supervisors to claim data is valid thereby cheating carriers out of adequate time to complete their assignments, thus creating a hostile work environment.

32. Union Stewards were being isolated by management by not being allowed to talk to carriers on the floor.

33. A sign posted by Supervisor Tim Burke over the time clock stated when a Carrier receives his mail for overtime (OT) or undertime (UT), the Carrier is to leave his route and go and deliver the OT or UT first and then travel back to his/her original route. (In layman's terms "undertime" is to deliver additional mail on another mail carrier's route without getting paid).

34. The Defendant Dickson recklessly, deliberately and maliciously with the intent to do harm mistreated the Plaintiff.

35. Defendant Dickson would stand behind the Plaintiff insisting that he case faster and get out of the office quicker.

36. Defendant Dickson constantly insisted the Plaintiff case more than the actual time and more than the standard 18/8.

37. On one occasion, Defendant Dickson let a younger carrier, Joe Pilarcik who was replacing the Plaintiff on his day off leave the office much later than the Plaintiff.

8

38.On or about November 2006, the Plaintiff experienced sweating and a feeling of panic after Defendant Dickson demanded the Plaintiff deliver more mail in less time.

39.Defendant Dickson harassed the Plaintiff threatening three (3) times to walk with the Plaintiff the entire day.

40.Union Rules state Management must give carriers at least a one (1) day notice before walking/inspecting a Carrier.

41. Because of the harassment, Lynn Lynott Union Steward, Defendant Dickson and the Plaintiff had to go into the Blue Room to settle this undertime/harassment dispute.

42.While in the Blue Room, Defendant Dickson agreed Plaintiff could undertime in the office because it was impossible for him to undertime on the road due to distance in traveling.

43.While in the Blue Room, Plaintiff told Defendant Dickson, "I want the harassment to stop."

44.Then Defendant Dickson replied, "Mike why don't you bid out of my unit!"

45. The Plaintiff then turned to Lynn Lynott and told her to write that down because that was an admission that Dickson was harassing the Plaintiff as the Defendant Dickson wanted the Plaintiff out of his unit.

46. On or about November 2006, the Plaintiff visited his doctor, Stephanie Boyarsky, MD as he was having health issues due to the stress he was experiencing at work.

47. Defendant Dickson harassed the Plaintiff about 75 % of the time by telling him to case faster, to undertime and to get out of the office earlier.

48. This harassment continued from approximately November 2006 until Defendant Dickson transferred into the Maintenance Department of the Post Office.

49. Dr. Boyarsky had to give the Plaintiff medical excuses on 5/25/07 and 5/29/07 for being off work for hypertension and anxiety due to stress at work **(See attached Exhibits 1 and 2).**

50. The harassment intensified to approximately 90% of the time with the change from Defendant Dickson's supervision to a Temporary (204B) Supervisor Defendant Passarelli.

51. The Defendant Passarelli recklessly with greater intensity and disregard for Plaintiff's health, safety and welfare mistreated him.

10

52. Defendant Passarelli in the morning always came up to the Plaintiff first before going to other Carriers telling him that he would have to undertime in violation of the Collective Bargaining Agreement.

53. The Plaintiff was treated differently from other postmen who were similarly situated to him.

54. The actions were reckless, intentional, malicious and designed to constructively discharge the Plaintiff by forcing him to resign due to the impact the hostile conditions had on him physically.

55. Defendant Passarelli even though the Plaintiff had more than 25 years of service continuously harassed the Plaintiff to case more than the actual time and more than the standard (18/8) and to get out of the office earlier.

56. Defendant Passarelli continuously tried to force the Plaintiff to undertime on the road even though it was not possible without going into overtime.

57. The Plaintiff was inspected on six (6) separate occasions, twice by Defendant Dickson; twice by Pete LNU; once by an Independent Inspection Team and once by Defendant Passarelli.

58. Other Mail Carriers, Dave Atens, Cindy Lucas, Al Galka, Bobby Palermo and Steve Chimel would question the Plaintiff as to why Defendant Passarelli was always deliberately taunting and psychologically attacking him.

11

59. Plaintiff did not file grievances because he didn't want to relive each harassing situation.

60. Plaintiff's physician was monitoring his workplace stress and anxiety through medication and scheduled appointments.

61. On March 18, 2009, there were at least four (4) Union Representatives available at the Scranton GMF:  Anthony Cognetti, Walter Sanko, Thomas Gavin and Steve Chimel.

62. The Plaintiff sustained a work related injury on March 18, 2009 while working at his case.

63. Supervisors Brian Tucker, Diane Passarelli and the postmaster Linda Shall were observed by Cindy Lucas a Mail Carrier around the Plaintiff's case on March 18, 2009 before he arrived.

64. At approximately 7:40AM, the Plaintiff arrived at his case after checking his vehicle and putting his coat in his locker.

65. The Plaintiff while walking to his case noticed Defendant Passarelli talking on the telephone looking directly at the Plaintiff which the Plaintiff found to be another form of intimidation.

66. At approximately 7:45AM, Defendant Passarelli came up behind the Plaintiff and said, "I know you are not going to like this, but you have to undertime on job 808 for an hour."

67. The Plaintiff told Defendant Passarelli that it was not possible and at that time he requested to speak to a Union Steward.

68. Approximately five (5) minutes later, conferring around Defendant Passarelli's desk and looking directly at the Plaintiff were Defendants Shall, Tucker, Passarelli and an unidentified female supervisor.

69. The Plaintiff began to sweat, developed chest pain, feeling of panic, trouble breathing, dagger like pain going through his back and tingling in his left leg.

70. Defendant Passerelli then came back over to the Plaintiff and stated again that the Plaintiff had to undertime one (1) hour.

71. The Plaintiff stated again that it was impossible and for the 2nd time asked Defendant Passerelli for Union Representation.

72. Defendant Passarelli didn't respond.

73. Plaintiff then asked to use the telephone to call his wife, as he knew something physically wrong was happening to him.

74. Defendant Passarelli then looked at Defendant Postmaster Shall.

75. Defendant Shall nodded giving her OK for the Plaintiff to use the phone.

76. At 7:56AM, the Plaintiff called his wife and explained to her that he needed to see the doctor as something physically was going wrong.

77. Defendants Passarelli, Shall, Tucker and an unidentified female supervisor listened while Plaintiff spoke to his wife on the phone concerning his health issues.

78. The Plaintiff's wife told him she would get in touch with the doctor and call him right back.

79. The Plaintiff returned to his case sweating profusely.

80. Plaintiff then left his case and went to his postal vehicle to retrieve some physician prescribed medicine for workplace stress.

81. Even though Defendants Passarelli, Shall and Tucker listened to the Plaintiff's personal telephone conversation concerning his health and requesting to speak or see his doctor, Defendant Passarelli went looking for the Plaintiff when he went to retrieve his prescribed stress medication.

82. The incident on March 18, 2009 was so intense that the Plaintiff couldn't leave his case without Defendants Passarelli and Tucker chasing him down.

14

83. The Defendant Passarelli was watching the Plaintiff's every move so that he could not get a Union Representative to discuss the one (1) hour of undertime.

84. Upon his return to his case, the Plaintiff was met at the double doors by Defendant Tucker who shouted at him, "Where did you go!?"

85. Plaintiff responded that he went to his vehicle for doctor prescribed medication and at that time asked Defendant Tucker for Union Representation.

86. The Plaintiff continued to speak with Defendant Tucker telling him how he didn't agree with his fuzzy math and told him "I am a mailman not a mathematician and even if I was, I'm not privy to those figures before I report to work."

87. Defendant Brian Tucker never contacted a Union Steward as requested by the Plaintiff.

88. At that point Defendant Passarelli joined in their discussion.

89. Defendant Tucker, then asked Defendant Passarelli, "Don't you have something for Mike to case in the office?"

90. Defendant Passarelli stated, "No!, he has to undertime an hour off 808."

91. The Plaintiff requested a reasonable accommodation.

15

92. The job directly behind No. 808 is No. 945 which was open on March 18, 2009.

93. At that time no one was casing job 945.

94. Again Plaintiff requested a Union Steward and for a total of four (4) times none was provided.

95. At 8:10AM, Dr. Boyarsky contacted the Plaintiff's wife.

96. At 8:12AM, the Plaintiff wife on her cell phone and Dr. Boyarsky on the Plaintiff's landline called the Post Office and the Defendant Pugliese answered the phone, "Scranton Post Office, Chris".

97. The Plaintiff wife asked to speak to her husband Mike Ruddy.

98. Defendant Pugliese said, "One moment".

99. Plaintiff wife along with Dr. Boyarsky held on the phone for more than five (5) minutes.

100.   At 8:18AM, Plaintiff wife then redialed the Post Office.

101.   This time another man known to be Supervisor Bob Smith answered the phone.

102.   Plaintiff wife angrily stated that she had been holding on this line for more than three (3) minutes waiting for her husband, Mike Ruddy.

103.   The man replied, "Really, I never heard him paged."

16

104.   The man then hesitated for a moment and said, "Is this an emergency?"

105.   The Plaintiff wife replied, "Yes, it's an emergency!"

106.   There is no Postal Policy/Regulations stating that Management must ask who is calling.

107.   There is no Postal Policy/Regulation stating that Management must ask if the call is an emergency.

108.   Plaintiff then heard his name paged and went to the telephone.

109.   The Plaintiff then spoke to his doctor via his wife and described his symptoms.

110.   Dr. Boyarsky told the Plaintiff to go immediately to the hospital emergency room.

111.   The Plaintiff told Defendant Passarelli that he was going to the Emergency Room.

112.   Defendant Passarelli threatened the Plaintiff stating he would need documentation for his absence upon returning to work.

113.   Union Rules allow an employee to take off two (2) consecutive sick days without any documentation.

114.   The Plaintiff proceeded to leave the Post Office.

115.   Plaintiff was met by Walter Sanko, a Union Steward and briefly stated what had happened.

116.   Defendant Passarelli never requested a Union Steward even after the Plaintiff requested one from her on three (3) separate occasions.

117.   According to Union Steward Walter Sanko within the following week and a half, Defendant Passarelli had changed her story three (3) times regarding the incident with her and the Plaintiff on March 18, 2009.

118.   Defendant Passarelli apologized to Walter Sanko regarding the incident on March 18, 2009.

119.   The Defendants beyond their scope of employment were deliberately mistreating the Plaintiff by trying to force him to work at a faster pace even though he was over the age of 40 and had over twenty five (25) years of service.

120.   The Defendants Postmaster General Potter, U.S. Postal Service, Shall, Tucker and Passarelli violated Plaintiff's Civil Rights by not allowing him on four (4) separate occasions to have Union Representation.

121.   The Union filed two (2) grievances on the Plaintiff's behalf. Both were settled favorably for the Plaintiff on April 13, 2009.  **(See attached Exhibits 3 and 4).**

    **a)** **Exhibit 3** acknowledges the right to Union representation.

    **b)** **Exhibit 4** requires management to discuss undertime and not use their projections as the sole determinant of a carrier's leaving or return time.

122.   On June 29, 2009, the Plaintiff filed a claim with the US Department of Occupational Workers' Compensation Program (OWCP).

123.   The Plaintiff was notified by letter dated July 6, 2009 that the Defendants were challenging the Plaintiff's OWCP claim.

124.   By challenging the Plaintiff's OWCP claim, the Defendants continue to recklessly, deliberately and with malice viciously attack the Plaintiff thus forcing the Plaintiff to be on Leave Without Pay (LWP) status which is causing both Plaintiffs a financial hardship, severe emotional distress, extreme stress and anxiety.

125.   Plaintiff received a letter dated July 16, 2009 with attachments from the US Department of Labor requiring Plaintiff to respond to the Defendants' statements.

126.   One said attachment was Defendant Shope's defamatory statement containing rumors and innuendoes against the Plaintiff's reputation and work ethic that he had been in a rehab facility for alcohol abuse. **(See attached Exhibit 5).**

127.   Another attachment was a statement dated June 26, 2009 from Temporary (204B) Supervisor Defendant Pugliese making false, slanderous and malicious statements that the Plaintiff smelled of alcohol. **(See attached Exhibit 6).**

128.   Defendant Pugliese never filed any incident report or took corrective action against the Plaintiff for allegedly smelling of alcohol or being under the influence of alcohol.

129.   Defendant Pugliese has been known to be coached into what to say by his superiors.

130.   Also another statement attached to said letter was a false, slanderous and malicious statement dated June 26, 2009 from Temporary (204B) Supervisor Defendant Bansa stating that in 2007 and 2008 she observed the Plaintiff with glassy eyes and the smell of alcohol. **(See attached Exhibit 7).**

131.   Defendant Bansa never filed any incident reports or took corrective action against the Plaintiff for allegedly smelling of alcohol or being under the influence of alcohol.

132.    Plaintiff's immediate Supervisors Dickson and Passarelli never complained of or took corrective action against the Plaintiff for allegedly smelling of alcohol or being under the influence of alcohol.

133.    Co-workers never smelled any alcohol on the Plaintiff's breath or on his person.  **(See attached Exhibit 8).**

134.    Postal customers never smelled any alcohol on the Plaintiff's breath or on his person. **(See attached Exhibit 9).**

135.    The Defendants individually jointly and severally failed to do a complete or thorough investigation as there has never been an incident report filed or corrective action taken against the Plaintiff for allegedly smelling of alcohol or being under the influence of alcohol.

136.    Plaintiff on several occasions met employees and/or former employees of the US Postal Service and was questioned about the rumor that he was in alcohol rehab.

137.    On numerous occasions the Vice President of Branch 17 Anthony J. Cognetti had to defend the Plaintiff from Supervisors' treatment.

138.    Management wrongly docked the Plaintiff's pay for days of work.  However after grievance procedures, Management was proven wrong and Plaintiff's pay was finally restored.

139.   Due to the constant mistreatment of the Plaintiff by the Defendants individually, jointly and severally, Plaintiff will never have the privilege and perks associated with being No. 1 on the Seniority List.

140.   On August 2, 2009, Defendants US Post Office and Shall conspired with an ex-GMF Temporary (204B) Supervisor to watch the Plaintiff's actions while he was walking up at Nay Aug Park, Scranton.

141.   The Defendants individually, jointly and severally acted recklessly, maliciously, intentionally with malice of forethought to intentionally injure the Plaintiff for personal reasons outside of the scope of their employment on and off government property.

142.   The government not only allowed the individual Defendants to act in an uncontrolled manner, but condoned it occurring on and off government property although it knew or should have known without hesitation that the conduct was vicious, unrelenting, intentional, pervasive and designed to harm an individual of reasonable sensibilities.

143.   As a result of the conduct of the Defendants individually, jointly and severally, the Plaintiff has been subjected to severe injuries including but not limited to emotional distress, humiliation, anxiety, embarrassment,

depression, loss of consortium, loss of enjoyment of life, pain & suffering all of which he has suffered and will continue to suffer for an indefinite period into the future.

144.   At all times relevant hereto the individual Defendants violated the Federal Tort Claims Act and State Laws as hereinafter set forth.

145.   As a direct result of the reckless, vicious, malicious, unrelenting and pervasive conduct of the Defendants, Plaintiff's ability to perform his work was disrupted and caused him to have a physical and psychological breakdown forcing him to retire.

146.   As a further result of this conduct, his wife has lost the services necessities, medical expenses, assistance, comfort, society, conjugal affection, cooperation, maintenance and aid.

## COUNT I

## VIOLATION OF THE FEDERAL TORT CLAIMS ACT

**Plaintiff v. United States of America;
United States Postmaster General John E. Potter;
United States Postal Service; Linda Shall; Brian Tucker;
Christopher Pugliese; Lisa Bansa; Diane Passarelli;
Rick Dickson and Holly Shope**

Paragraphs 1 through 146 inclusive are incorporated herein as though more fully set forth at length.

147.   The Defendants individually as well as jointly on and off government property outside the scope of their employment separately and in concert engaged in an intentionally, reckless, malicious, vicious, unrelenting and pervasive conduct on government property and with the approval of government supervisors, the individual Defendants individually and in concert injured and interfered with the Plaintiff's ability to seek medical attention when it was obvious he was having major physical problems which was brought about by their conduct.

**WHEREFORE**, judgment against the Defendants individually, jointly and severally as well as the United States of America for both compensatory and punitive damages in an amount in excess of Eighty Thousand Dollars ($80,000.00) together with interests, costs and attorney's fees is demanded.

## COUNT II

## CONSPIRACY

**Plaintiff v. United States of America;**
**United States Postmaster General John E. Potter;**
**United States Postal Service; Linda Shall; Brian Tucker;**
**Christopher Pugliese; Lisa Bansa; Diane Passarelli;**
**Rick Dickson and Holly Shope**

Paragraphs 1 through 147 inclusive are incorporated herein as though more fully set forth at length.

24

148.   The Defendants Dickson, Shall, Tucker and Passarelli individually, jointly and severally acted in concert and discussed the efforts with each other and others in order to force the Plaintiff to case faster and leave the office earlier.

149.   The Defendants Shall, Tucker and Passarelli individually, jointly and severally acted in concert and conspired with each other by denying the Plaintiff Union Representation.

150.   The Defendants Shall, Tucker and Passarelli individually, jointly and severally acted in concert with each other when allowing Plaintiff to use the telephone.

151.   The Defendant US Postal Service, Shall and Pugliese individually, jointly and severally acted in concert and discussed with each other whether Plaintiff should be paged.

152.   In furtherance of the plans, scheme, design, etc…, the Defendants individually, jointly and severally acted in concert with each other and reviewed and discussed the efforts in which they would become involved in order to establish false charges against the Plaintiff which would result in him not being able to collect OWCP and with the intent of forcing him into early retirement as more fully set forth herein and above.

25

153.   The individual Defendants met with each other to concoct and publish false and outrageous statements which they knew or should have known were untrue and blatant unsubstantiated lies.

**WHEREFORE**, judgment is demanded against the Defendants individually, jointly and severally for both compensatory and punitive damages in an amount in excess of Eighty-Thousand Dollars ($80,000.00) demanded together with interests, costs and attorney's fees.

## COUNT III

## LIBEL AND SLANDER

**Plaintiff v. United States of America;
United States Postmaster General John E. Potter;
United States Postal Service; Linda Shall; Brian Tucker;
Christopher Pugliese; Lisa Bansa; Diane Passarelli;
Rick Dickson and Holly Shope**

Paragraphs 1 through 153 inclusive are incorporated herein as though more fully set forth at length.

154.   The Defendants individually as well as in their official capacity, separately and in concert libeled and slandered the Plaintiff by making false accusations, innuendos, rumors and outright lies when challenging the Plaintiff's OWCP claim as more fully set forth above.

26

155.   The Defendants individually as well as in their official capacity, separately and in concert defamed the Plaintiff based on rumors, unsubstantiated allegations unsupported by any evidence stating that the Plaintiff was in a rehab facility for allegedly alcohol abuse as more fully set forth above.

156.   The actions taken by the Defendants were intentional, malicious and outrageous designed to influence the opinion of the OWCP into not allowing Plaintiff to receive Workers' Compensation.

157.   The individual Defendants acted outrageously without due concern for the rights, safety or well-being of the Plaintiff and intentionally made malicious, vicious and irresponsible lies about the Plaintiff which they were well aware were false and designed solely to injure him and cause him to resign all of which they were effective in doing.

158.   The actions taken by the Defendants were intentional, malicious and outrageous designed to harm the character and reputation of the Plaintiff and has become public knowledge throughout the Post Office and community.

**WHEREFORE**, judgment is demanded against the Defendants individually, jointly and severally for both compensatory and punitive damages in an amount in excess of Eighty-Thousand Dollars ($80,000.00) demanded together with interests, costs and attorney's fees.

## COUNT IV

## CONSTRUCTIVE DISCHARGE

**Plaintiff v. United States of America;
United States Postmaster General John E. Potter;
United States Postal Service; Linda Shall; Brian Tucker;
Christopher Pugliese; Lisa Bansa; Diane Passarelli;
Rick Dickson and Holly Shope**

Paragraphs 1 through 158 inclusive are incorporated herein as though more fully set forth at length.

159.   The Plaintiff by virtue of the violation of his Civil Rights, the hostile work environment, the retaliation and the lies publicized about him suffered such severe physical and psychological injury as to force him into retirement.

160.   The conduct was outrageous and unreasonable which would have caused anyone of reasonable conscience to do likewise.

**WHEREFORE,** judgment is demanded against the Defendants individually, jointly and severally for both compensatory and punitive damages in an amount in excess of Eighty-Thousand Dollars ($80,000.00) demanded together with interests, costs and attorney's fees.

## COUNT V

## INVASION OF PRIVACY

**Plaintiff v. United States of America;**
**United States Postmaster General John E. Potter;**
**United States Postal Service; Linda Shall; Brian Tucker;**
**Christopher Pugliese; Lisa Bansa; Diane Passarelli;**
**Rick Dickson and Holly Shope**

Paragraphs 1 through 160 inclusive are incorporated herein as though more fully set forth at length.

161.   The Defendants individually as well as in their official capacity, separately and in concert intentionally intruded upon the solitude and seclusion of the Plaintiff and his private affairs in a highly offensive manner and in such a substantial manner causing mental suffering, shame and humiliation.

162.   **On March 18, 2009 between 7:56AM and 8:18AM, the Plaintiff called his wife and explained to her in the presence of the Defendants Passarelli, Shall, Tucker and an unidentified female supervisor that he was having physical problems which he described to her that he was sweating, developing chest pains, feeling panicked, having difficulty breathing and dagger-like pain going through his back accompanied by tingling in his left leg.**

163.   **The Plaintiff requested that his wife contact his doctor and get back to him.**

164.   **Having spoken to the doctor, Plaintiff's wife at 8:12AM called the Plaintiff on the Post Office landline and the Defendant Pugliese answered.**

165.   **When the Plaintiff wife asked to speak to her husband, Pugliese answered, one moment.  Plaintiff's wife along with Dr. Boyarsky remained on the phone for more than five (5) minutes.**

166.   **At 8:18AM, Plaintiff's wife then redialed the Post Office landline and this time was answered by Supervisor Bob Smith who asked if the called was an emergency.  The Plaintiff's wife responded in the affirmative.**

167.   **Plaintiff then spoke to his doctor through his wife and described his symptoms.**

168.    **The doctor told him to go immediately to the hospital emergency room.   While the Defendants, Shall, Passarelli, Tucker and an unidentified female supervisor listened to the conversation.**

169.    **This conduct was highly offensive to Ruddy and exacerbated his symptoms.**

170.    **The Plaintiff was in obvious discomfort and panic and had nowhere else to go to make a phone call to his wife which was a personal matter in which in all decency would have precluded the Defendants from standing there eavesdropping to discover what his personal condition was.**

171.    **Ruddy when speaking to his wife and doctor had more than a reasonable expectation of privacy in placing the phone call and receiving the response.**

172.    **It was not the Plaintiff's intent to have the Defendants physically participate in the conversations when the conversations involved personal matters concerning the Plaintiff's health which he was sharing with his wife and also his doctor.**

173.    **The Defendants had no need to know the content of the Plaintiff's conversation and upon intruding physically violated not only his privacy, but also HIPAA.**

174. **The Defendants had allowed the Plaintiff to speak only at a phone in an open area and neither offered him privacy by leaving the area nor by giving him an alternate phone to utilize out of their hearing.**

175. **Suffering from life threatening symptoms and debilitating emotional panic, the Plaintiff was in no condition to resist.**

176. **The conduct did not constitute an administrative or personal matter and it was clear error and abuse on the part of the employment establishment and the Defendants acted unreasonably.**

177. **In doing so the Defendants were privy to the entire conversations and then attempted to use the information thus obtained to their advantage against the Plaintiff in the OWCP action.**

178. **By doing so, they placed the Plaintiff's health in a false light and by so doing attempted to manipulate a decision of the OWCP referee.**

179. The Defendants knew or should have known that it would be substantially certain to cause the Plaintiff's application for OWCP to be turned down and placed under close scrutiny with the overall effect to make sure the Plaintiff did not receive OWCP and force the Plaintiff to take an early retirement.

180. The actions of the Defendants were deliberate and malicious intending to cause harm to the Plaintiff.

**WHEREFORE**, judgment is demanded against the Defendants individually, jointly and severally for both compensatory and punitive damages in an amount in excess of Eighty-Thousand Dollars ($80,000.00) demanded together with interests, costs and attorney's fees.

## COUNT VI

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

**Plaintiff v. United States of America;
United States Postmaster General John E. Potter;
United States Postal Service; Linda Shall; Brian Tucker;
Christopher Pugliese; Lisa Bansa; Diane Passarelli;
Rick Dickson and Holly Shope**

Paragraphs 1 through 180 inclusive are incorporated herein as though more fully set forth at length.

181.   The Plaintiffs as a result of the actions of the Defendants individually, jointly and severally has endured substantial humiliation, embarrassment, pain and suffering from their actions which he has suffered and will continue to suffer indefinitely for a period of time into the future.

**WHEREFORE**, judgment is demanded against the Defendants individually, jointly and severally for both compensatory and punitive damages in an amount in excess of Eighty-Thousand Dollars ($80,000.00) demanded together with interests, costs and attorney's fees.

## COUNT VII

### LOSS OF CONSORTIUM

**Plaintiff v. United States of America;
United States Postmaster General John E. Potter;
United States Postal Service; Linda Shall; Brian Tucker;
Christopher Pugliese; Lisa Bansa; Diane Passarelli;
Rick Dickson and Holly Shope**

Paragraphs 1 through 181 inclusive are incorporated herein as though more fully set forth at length.

182.   As a further result of this conduct, his wife has lost the services necessities, medical expenses, assistance, comfort, society, conjugal affection, cooperation, maintenance and aid.

183.   The wife Plaintiff has lost the society, comfort and assistance of her husband as a direct result of Plaintiff husband's work related disability.

184.   She has been required to perform many of the functions which he was able to perform in the past in and about the house and during their normal lives.

185.   The Plaintiff wife suffered and will continue to suffer a financial hardship for an indefinite period of time into the future.

186.   She has suffered a loss of consortium as a result of the injuries.

**WHEREFORE**, judgment is demanded against the Defendants individually, jointly and severally for both compensatory and punitive damages in an amount in excess of Eighty-Thousand Dollars ($80,000.00) demanded together with interests, costs and attorney's fees.

## DEMAND FOR JURY TRIAL

Pursuant to the Federal Rules of Civil Procedure the Plaintiffs demand a trial by jury in this matter.

Respectfully submitted,

THE LOFTUS LAW FIRM, P.C.


/s/ *Peter G. Loftus, Esquire*
Attorney I.D. No. 09943
P.O. Box V, 1207 North Abington Road
Waverly, PA  18471
(570) 586-8604