**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MICHAEL J. RUDDY and CHERILYNN M. RUDDY, | CIVIL ACTION NO. 3:11-CV-1100 |
| Plaintiffs, | (JUDGE CAPUTO) |
| UNITED STATES OF AMERICA, et al. | |
| Defendants. | |

## MEMORANDUM

Presently before the Court is the Defendants' Motion to Dismiss.  (Doc. 27.) Because I find that Plaintiffs' claims against the sole Defendant–the United States of America–are precluded by a combination of the Federal Employees' Compensation Act and the Civil Service Reform Act, this action will be dismissed.

## I. BACKGROUND

Plaintiff alleges the following in his Amended Complaint.  (Doc. 22.)  Plaintiff Michael J. Ruddy, at all relevant times, was a loyal employee of the Untied States Post Office in Scranton, Pennsylvania.  His wife, Cherilynn M. Ruddy, is also a Plaintiff in this matter.  The named Defendants include the United States of America; the United States Postal Service; the United States Postmaster General John E. Potter; the Postmaster of the Scranton Post Office, Linda Shall; several Scranton Post Office supervisors, including Brian Tucker, Christopher Pugliese, Lisa Bansa, Diane Passerilli, and Rick Dickson; as well as Holly Shope, who was a manager at the Scranton Post Office.  (Am. Compl. at ¶¶ 7-16, Doc. 1).

Ruddy's supervisors engaged in a course of malicious conduct designed to force him to resign.  No other Post Office employee was similarly targeted.  In particular, Supervisor

Dickson consistently singled out Ruddy, insisting that he sort mail at a rate beyond what was required by policy in order to dismiss him earlier from work.  (*Id.* at ¶¶ 36-37). Furthermore, Dickson threatened on three occasions, against policy, to shadow Ruddy for an entire day.  Sometime in November of 2006, this harassment began to affect Ruddy's health, requiring him to see a physician.  One specific incident of harassment finally forced a meeting between Dickson and Ruddy with a Union Steward present.  At that meeting, Ruddy told Dickson "I want the harassment to stop," to which Dickson replied "why don't you bid out of my unit." (*Id.* at ¶¶ 41-44).

While Dickson harassed Ruddy about seventy-five percent (75%) of the time, this percentage increased to ninety percent (90%) when Temporary Supervisor Passerilli took over as Ruddy's supervisor.  (*Id.* at ¶¶ 48-51).  Other mail carriers took notice and asked Ruddy why Passerilli was psychologically attacking him.  (*Id.* at ¶¶ 57-58).   On March 18, 2009, Passerilli intimidated Ruddy, watching him as he arrived at work.  Five minutes later, she approached Ruddy at his station, instructing him to assist on another employee's mail route.  Ruddy explained that this was not possible, and asked to speak to a Union Steward. Ruddy then found himself at Passerilli's desk, surrounded by Defendants Shall, Tucker, Passerilli and one other unidentified supervisor.  Ruddy began to sweat, developed chest pain and shortness of breath, and experienced "dagger like pain going through his back and tingling in his left leg." (*Id.* at ¶ 69).  Plaintiff phoned his wife, in front of the group, who agreed to call his doctor.  Ruddy then retrieved medication from his vehicle, which had been prescribed for his workplace stress.  Ruddy's Doctor, after being delayed by Defendants, finally got Ruddy on the phone and advised him to go to the hospital, which he did. Throughout the entire ordeal, Ruddy requested a Union Steward three or four times,

although none was provided.   Moreover, Defendants Tucker and Passerilli carefully watched Ruddy to ensure that he did not contact a Union Steward.  As a result of these events, the Union filed two grievances that were settled in Ruddy's favor.  (*Id.* at ¶ 121). Ruddy also filed an injury claim with the U.S. Department of Labor, Office of Workers' Compensation Programs (OWCP), which the Defendants maliciously challenged.

In his Amended Complaint, Ruddy claims that the Defendants caused him to suffer emotional distress, humiliation, anxiety, embarrassment, depression, loss of enjoyment of life, and pain and suffering.  (*Id.* at ¶ 143).  As such, Ruddy was prevented from performing his work, was caused to have a physical and psychological breakdown, and was forced to retire early.

In his initial Complaint filed on June 8, 2011, Plaintiffs brought claims under the Federal Tort Claims Act, and asserted state-law claims for conspiracy; invasion of privacy; constructive discharge; libel and slander; intentional infliction of emotional distress; and loss of consortium.  On November 21, 2011, I granted the Defendants' motion to dismiss as to the libel and slander claim (Count III) and false light and intrusion upon seclusion claim (Count V).  Leave to amend was granted as to the libel and slander claim only.  I also struck several claims for punitive damages and substituted the United States as the sole defendant as to all claims except Constructive Discharge.

Today, the Defendants again move to dismiss this action for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).  In particular, the Defendants argue that Ruddy's claims are bared by the Federal Employees' Compensation Act ("FECA"), 5 U.S.C. § 8101 *et seq.*, and the Civil Service Reform Act of 1978 ("CSRA"), 5 U.S.C. § 1101 *et seq.*  The motion has been fully briefed and is ripe for the Court's review.

3

## DISCUSSION

### I. Legal Standard

Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of a complaint, in whole or in part, for a "lack of subject-matter jurisdiction." *See* Fed.R.Civ.P. 12(b)(1). Rule 12(b)(1) motions may take one of two forms: a facial attack to the sufficiency of the pleading or a factual attack. *See Democracy Rising PA v. Celluci*, 603 F. Supp. 2d 780, 788 (M.D. Pa. 2009). A factual attack involves a claim "that the court in fact lacks subject-matter jurisdiction, no matter what the complaint alleges." *NE Hub Partners, L.P. v. CNG Transmission Corp.*, 239 F.3d 333, 341 (3d Cir. 2001) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

When subject-matter jurisdiction is factually challenged pursuant to Rule 12(b)(1), the plaintiff bears the burden of persuasion. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir.1991)); *see also Gould Elecs. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000). This is a much more demanding standard than that applied to Rule 12(b)(6). *Id.* And, "[b]ecause at issue in a factual 12(b)(1) motion is the trial court's jurisdiction its very power to hear the case there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Mortensen*, 549 F.2d at 891. Thus, "in reviewing a factual attack, the court may consider evidence outside of the pleadings." *Gould Elecs.*, 220 F.3d at 176 (citing *Gotha v. United States*, 115 F.3d 176, 178–79 (3d Cir.1997)). As such, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial

4

court from evaluating for itself the merits of the jurisdictional claim." *Mortensen*, 549 F.2d at 891.

## II.   Analysis

### A.   Clarification of Current Claims Pending

There are some preliminary issues regarding the stated claims in Plaintiffs' Amended Complaint which need to be addressed before proceeding to the more substantive issues below.

First, as noted above, I dismissed Plaintiffs' libel and slander claim in full without leave to amend in my November 21, 2011 Memorandum and Order. *See Ruddy v. United States*, 3:11-CV-1100, 2011 WL 5834953 (M.D. Pa. Nov. 21, 2011).   Therefore, as an identical claim for libel and slander has been improperly included in the Amended Complaint, it will be summarily dismissed.

Secondly, the Plaintiffs have also apparently disregarded my November 21 Order insofar as the United States of America should have been substituted as the sole Defendant as to all claims except for constructive discharge.   In fact, I further determine today that the United States should also be substituted as the sole Defendant as to that constructive discharge claim as well.   Initially, my decision *not* to substitute the United States as to that claim was based on my interpretation of constructive discharge as "not a tort, but 'a judicially-created method of indirect proof by which plaintiff may show that he was fired despite the impression of voluntariness created by his own resignation.'" *Id.* at *7 (quoting *Garrett v. Firestone Tire & Rubber Co.*, No. Civ. No. 88–0708, 1989 WL 6620 at *4 (D.N.J. Jan. 09, 1989)).   However, I reversed this determination in light of a subsequent motion for reconsideration, concluding that Plaintiffs' claim for constructive discharge was actually a

state-law tort claim.  *See Ruddy v. United States*, 3:11-CV-1100, 2012 WL 511487, at *3 (M.D. Pa. Feb. 15, 2012).  As such, I now clarify that this claim–and all of the other claims properly included in the Amended Complaint–shall proceed solely as against the Defendant United States of America.[1]

### B.    Federal Employees' Compensation Act

The Defendants argue that the Federal Employees' Compensation Act ("FECA"), 5 U.S.C. § 8101 *et seq.*, is an exclusive remedy that precludes the Court from exercising subject matter jurisdiction over this action.

The FECA is a comprehensive workers' compensation scheme requiring the United States to compensate its employees for any injury or death incurred "while in the performance of his duty."  *Id.* at § 8102(a).  This liability:

> is exclusive and instead of all other liability of the United States . . . to the employee, his legal representative, spouse, dependents, next of kin, and any other person otherwise entitled to recover damages from the United States . . . because of the injury or death in a direct judicial proceeding . . . under a workmen's compensation statute or under a Federal tort liability statute.

5 U.S.C. § 8116(c).  As such, it was designed to protect the United States from suits under, *inter alia*, the Federal Tort Claims Act, and mimics the typical "quid pro quo" found amid workers' compensation statutes: "employees are guaranteed the right to receive immediate, fixed benefits, regardless of fault and without need for litigation, but in return they lose the right to sue the Government."  *Lockheed Aircraft Corp. v. United States*, 460 U.S. 190, 193-94 (1983) (citations omitted).   Therefore, "[w]here FECA applies, it unambiguously precludes 'all other liability of the United States' either 'under a workmen's compensation

---

[1] I also note that, contrary to my November 21, 2011 Order, claims for punitive damages have remained as to Counts I, V, VI, and VII.

6

statute or under a Federal tort liability statute.'" *DiPippa v. United States*, 687 F.2d 14, 17 (3d Cir. 1982) (quoting 5 U.S.C. § 8116(c)).

For claims within the FECA's domain, it is for the Secretary of Labor or his or her designee to determine whether such damages should be awarded, a decision which is "(1) final and conclusive for all purposes and with respect to all questions of law and fact; and (2) not subject to review by another official of the United States or by a court by mandamus or otherwise." *Elman v. United States*, 173 F.3d 486, 489 (3d Cir. 1999) (quoting 5 U.S.C. § 8128(b)). Moreover, the exclusivity of the FECA remedy does not simply bar a claim when the Secretary of Labor has granted plaintiff benefits under the FECA–it is the existence of the FECA coverage itself, and not actual compensation, that bars a tort suit against the government. 5 U.S.C. § 8116(c). Therefore, "where there is a 'substantial question' regarding FECA coverage, the federal courts will not entertain a claim, but rather will abstain from further action until the Secretary has made a determination regarding FECA coverage." *Heilman v. United States*, 731 F.2d 1104, 1110 (3d Cir. 1984) (citing *DiPippa*, 687 F.2d at 16.) Such a "substantial question" exists "unless it is certain that the Secretary would find no coverage." *Id.* Conversely, where it is beyond doubt that the injuries are within the FECA's purview, it is for the Secretary to decide liability and damages and the courts are wholly without subject matter jurisdiction. *Id.*

In the instant action, the Plaintiffs' claims against the United States consist of tort claims for conspiracy (Count II), constructive discharge (Count IV), invasion of privacy (Count V), intentional infliction of emotional distress (Count VI), and loss of consortium (Count VII). Since injuries falling within the FECA's purview are limited to those "by accident, a disease proximately caused by the employment, and damage to or destruction

7

of medical braces, artificial limbs, and other prosthetic devices," 5 U.S.C. § 8101(5), I first determine that Plaintiff's claims for conspiracy and constructive discharge are not covered by the FECA.  *See e.g. McDonald v. Salazar*, 831 F. Supp. 2d 313, 324 (D.D.C. 2011) ("the FECA covers only mental and physical injuries."); *Lawrence v. United States*, 631 F. Supp. 631, 636 (E.D. Pa. 1982) (citation omitted) ("the exclusivity of FECA remedies only applies to the redress of injuries within the coverage of the Act, that is, job-related physical injury.").

Secondly, because claims for invasion of privacy and intentional infliction of emotional distress are consistently regarded as raising a substantial question of coverage, those particular claims will be dismissed without prejudice as well as the conspiracy claim insofar as it is predicated on those claims.

Specifically, in *Tippetts v. United States*, the Tenth Circuit considered a former Postal Service employee's claims of invasion of privacy and intentional infliction of emotional distress in connection with an investigation of his workers' compensation claim.  308 F.3d 1091, 1093 (10th Cir. 2002).  That court found a "substantial question" as to whether the FECA extended to intentional infliction of emotional distress and remanded to the district court to abate the proceedings pending a determination by the Secretary.  *Id.* at 1095. While that court was unable to determine whether invasion of privacy was covered by the FECA, it declined to find "a substantial question of FECA coverage," but nonetheless found it "prudent to transfer these claims to the Secretary for an initial determination of whether they are covered by the FECA."  *Id.* at 1096; *see also Burg v. U.S. Dept. of Health And Human Services*, 387 F. App'x 237, 241 (3d Cir. 2010) (finding "a substantial question of FECA coverage would exist as to [plaintiff's] claims of intentional infliction of emotional distress" and that the district court therefore lacked jurisdiction over them).

8

On the issue of invasion of privacy, the Honorable Judge Yohn found a substantial question of coverage and held in civil suspense pending a determination by the Secretary the plaintiff's claims for invasion of privacy for disclosure of psychiatric records. *O'Donnell v. United States*, CIV.A. 04-00101, 2006 WL 166531, at *4-6 (E.D. Pa. Jan. 20, 2006). Since courts had found both ways on whether emotional distress injuries were covered by the FECA, and that the Employee Compensation Board had held that the FECA extended to emotional injury in the past where the injury resulted "from an employee's emotional reaction to his regular or specially assigned work duties or to a requirement imposed by the employment," this raised a substantial question of FECA coverage. *Id.* at *5-6.

The Plaintiffs have failed to carry their burden in presenting to the Court any cases or convincing argument in support of excluding their claims for intentional infliction of emotional distress or invasion of privacy from the FECA. Conversely, the aforementioned cases support the proposition that these claims raise a substantial question as to coverage and that a district court therefore does not have subject matter jurisdiction. Therefore, in finding that these claims raise a substantial question, I will dismiss these two claims without prejudice.

Finally, to the extent the claim for loss of consortium (Count VII) is predicated on Michael Ruddy's work-related injuries, it is also dismissed. *DiPippa*, 687 F.2d at 15 n.1 (3d Cir. 1982) (citation omitted) ("FECA coverage bars a spouse's suit for loss of consortium").

### C.   Civil Service Reform Act

The United States also argues that Ruddy's claims are similarly barred by virtue of the civil service protection provided through the Civil Service Reform Act ("CSRA") (codified at various sections of Title 5 of the United States Code).

"The CSRA provides a comprehensive statutory scheme which enables federal employees to obtain remedies for prohibited personnel practices engaged in by federal agencies." *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 794-95 (3d Cir. 2003).  As such, the CSRA "affords the exclusive remedy for damage claims of federal employees seeking redress for alleged constitutional violations arising out of the employment relationship." *Id.* at 795.  This does not, however, apply to a plaintiff's request for injunctive or declaratory relief. *Mitchum v. Hurt*, 73 F.3d 30, 36 (3d Cir. 1995).

I have previously held that Ruddy is subject to the CSRA. *Ruddy v. U.S. Postal Serv.*, 3:09-CV-1984, 2011 WL 1043339, at *4 (M.D. Pa. Mar. 18, 2011) *aff'd*, 455 F. App'x 279 (3d Cir. 2011) ("Ruddy is a federal USPS employee subject to the . . . Civil Service Reform Act of 1978").  Thus, in the instant case, I must determine whether the statutory structure prescribed by the CSRA precludes the state-law tort actions brought by Ruddy under the FTCA.

In *Bush v. Lucas*, 462 U.S. 367, 368 (1983), the Supreme Court held that, because the CSRA provided an elaborate remedial scheme to address such wrongs, a federal civil servant could not recover money damages from a supervisor under *Bivens*[2] for a retaliatory discharge for exercising his First Amendment rights.  This is because the CSRA prohibits federal employers from taking adverse actions against employees because of "the exercise of any appeal, complaint, or grievance right granted by any law, rule, or regulation." 5 U.S.C. § 2302(b)(9)(A), and it provides remedies for employees subject to any prohibited personnel

---

[2] "A *Bivens* action, which is the federal equivalent of the § 1983 cause of action against state actors, will lie where the defendant has violated the plaintiff's rights under color of federal law." *Brown v. Philip Morris Inc.*, 250 F.3d 789, 800 (3d Cir.2001) (citation omitted). *See Bivens v. Six Unknown Named Agents of Fed. Bur. of Narcotics*, 403 U.S. 388 (1971).

practice, including First Amendment retaliation for filing complaints. *Id.* at § 1214.  Thus, under *Bush*, an employee like Ruddy may not maintain a separate action for money damages based on a retaliatory discharge.

The CSRA, however, is limited to personnel actions.  To this end, Ruddy's claim for constructive discharge–and the extent to which his conspiracy claim is predicated on it–are squarely within the CSRA's purview and the Court is therefore precluded from reviewing this claim as against the United States.  This claim specifically alleges a forced retirement rendered through a hostile and malicious work environment.  (Am. Compl. at ¶ 159, Doc. 22.)  Such employer action is prohibited by the CSRA as it forbids, among other "prohibited personnel practices," "discriminat[ing] for or against any employee or applicant for employment on the basis of conduct which does not adversely affect the performance of the employee or applicant or the performance of others."  5 U.S.C. § 2302(b)(10).  The crux of Ruddy's claim is that he was discriminated against in his employment and was constructively discharged as a result, and this is the sort of claim Congress sought to address through the CSRA.  As such, Ruddy's claim for constructive discharge is precluded.

Although I found in the previous section that Ruddy's claims for invasion of privacy and intentional infliction of emotional distress are precluded by FECA, I also find that they are precluded by CSRA.  Such claims are consistently precluded by the FECA where they are the result of adverse personnel actions. *See e.g. Mangano v. United States*, 529 F.3d 1243, 1247 (9th Cir. 2008) (claims of intentional infliction of emotional distress and intentional interference with the right to practice a lawful profession fell "squarely within the definition of a personnel action"); *Plasai v. Mineta*, 212 F. App'x 287, 292 (5th Cir. 2006) (affirming that a claim for intentional infliction of emotional distress was a "prohibited

11

personal action" where it stemmed from the manner in which the defendants investigated and suspended the plaintiff); *Broughton v. Courtney*, 861 F.2d 639, 643 (11th Cir. 1988) ("where state common law claims are included in the personnel actions that employees can challenge under the CSRA, those state actions are preempted."); *Chrisanthis v. Nicholson*, C07-00566WHA, 2007 WL 2782860, at *4 (N.D. Cal. Sept. 25, 2007) (finding that where a plaintiff's claims of infliction of emotional distress resulted from the constructive discharge and retaliation it fell under the CSRA), *see also Arensdorf v. Everson*, CIV.A. H-07-2703, 2008 WL 2229745, at *5 (S.D. Tex. May 27, 2008) ("where a federal civil service employee . . . challenges an employer's action that does not constitute a 'personnel action' within the meaning of the CSRA, the employee remains free to challenge such actions under *Bivens*.").

Therefore, since Ruddy's claims of intentional infliction of emotional distress and invasion of privacy are predicated on intentional conducted allegedly aimed at forcing his retirement, these are adverse personnel actions that are also precluded by the CSRA.

## CONCLUSION

Plaintiffs' remaining claims[3] are foreclosed by a combination of the Federal Employees' Compensation Act and the Civil Service Reform Act. Specifically, Ruddy's claims for invasion of privacy (Count V) and intentional infliction of emotional distress (Count VI) are precluded both by the Federal Employees' Compensation Act and the Civil Service Reform Act, and his claim for constructive discharge (Count IV) is precluded by the Civil

---

[3]To refresh, Plaintiffs' claim for Libel and Slander (Count III) was dismissed in my November 21, 2011 Order. *Ruddy v. United States*, 3:11-CV-1100, 2011 WL 5834953 (M.D. Pa. Nov. 21, 2011). Additionally, Plaintiffs' claim for violation of the Federal Tort Claims Act (Count I) fails as a viable claim as it is not a cause of action itself, but "a limited waiver of the sovereign immunity of the United States." *Miller v. Phila. Geriatric Ctr.*, 463 F.3d 266, 270 (3d Cir. 2006).

Service Reform Act.  Moreover, as the claims for conspiracy (Count II) and loss of consortium (Count VII) are contingent upon these claims, they will also be dismissed.  An appropriate Order follows.


 July 18, 2012                                          /s/ A. Richard Caputo
Date                                                    A. Richard Caputo
                                                        United States District Judge